UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation, | Civil Action No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| -vs- | |
| IT'S FRIDAY, INC., a New York Corporation; and DOES 1-10, inclusive, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**Plaintiff Deckers Outdoor Corporation** ("Deckers" or "Plaintiff") for its claims against **Defendants It's Friday, Inc.** ("IT'S FRIDAY" or "Defendant") and DOES 1-10 (collectively "Defendants") alleges as follows:

## JURISDICTION AND VENUE

1.     Plaintiff Deckers Outdoor Corporation files this action against Defendant IT'S FRIDAY for trade dress infringement and trademark infringement of an unregistered mark under the Lanham Trademark Act of 1946, 15 U.S.C. §1051 et seq. (the "Lanham Act") and for related claims under New York common and statutory law. This Court has subject matter jurisdiction over the claims alleged in this action pursuant to 28 U.S.C. §§ 1331, 1338.

2.     This Court has subject matter jurisdiction over the federal claims asserted in this action under 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

3.     This Court has personal jurisdiction over Defendants because IT'S FRIDAY resides in the State of New York and Defendants conduct continuous and

systematic business in this district, placed infringing products in the stream of commerce directed to residents of this district, derived commercial benefits from the sale of infringing products, and caused injuries to Plaintiff within the State and Southern District of New York.

4.  Venue is proper under 28 U.S.C. §§ 1391 (b)-(c) because a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial district, and 28 U.S.C. § 1400(b) because Defendants committed acts of infringement in this judicial district.

## THE PARTIES

5.  Plaintiff Deckers Outdoor Corporation is a corporation organized and existing under the laws of the state of Delaware with an office and principal place of business in Goleta, California.  Deckers has been engaged in the design, distribution, marketing, offering for sale, and sale of footwear since 1975.  Deckers owns several brands of footwear including UGG®, Koolaburra ®, Teva ®, Sanuk® and Hoka One One®.

6.  Upon information and belief, Defendant It's Friday, Inc. is a corporation organized and existing under the laws of the state of New York with an office and principal place of business located at 207 Dahlia Drive, Mahopac, New York, 10541.

7.  Deckers is informed and believes that, together with IT'S FRIDAY, other individuals and entities currently named as DOES 1-10 may also be responsible in one manner or another for the wrongs alleged herein, in that at all relevant times, each one (including IT'S FRIDAY) was the agent and servant of the others and acting within the course and scope of said agency and employment. These other individuals and entities are sued under fictitious names, DOES 1-10 because their true names and capacities are currently unknown to Deckers.

Deckers will seek leave to amend this complaint when their true names and capacities are ascertained.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.     Deckers' Sanuk® Brand Yoga Sling Sandal

8.      Deckers has been engaged in the design, distribution, marketing, offering for sale, and sale of footwear since 1975.  Deckers owns and markets its footwear products under several distinctive trademarked brands, including UGG®, Koolaburra®, Teva®, Sanuk®, and Hoka One One®.

9.      Sanuk was founded in 1997 by Jeff Kelley, an entrepreneur and surfer who set out to build a backyard brand that was as much about funk as it was function, as hip as it was hippie and as humorous as it was heartfelt.  In July 2011, Deckers completed the acquisition of Sanuk®, which was then and is still one of the most beloved lifestyle footwear companies that began rooted in surf culture.

10.      Today, the Sanuk® brand is embraced by a wide range of fun-loving consumers that includes surfers, outdoor enthusiasts, yogis and many others.  The Sanuk® brand is well-known for a variety of innovative first-of-its-kind footwear products, including its Sidewalk Surfer hybrid sandal-shoe and its Yoga Sling sandal, a sandal designed for ultra-comfort combined with a chic, unique sling design.

11.      Since the Sanuk® Yoga Sling sandal was introduced in 2013, it has been marketed under a unique and distinctive appearance consisting of a combination of the following non-functional elements ("Yoga Sling Trade Dress"):

•      Thong-type sandal with a generally flat sole;

•      Foot bed is comprised of soft material;

•      Sling strap formed by a loop of fabric extending from a toe post around the heel and back to the toe post;

- An instep strap extending from the lateral side of the sole across the instep to the medial side of the sole;

- The instep strap and the sling strap appear unconnected and the instep strap overlaps the sling strap;

- Both the sling strap and the instep strap are formed of a soft fabric having an exaggerated width; and

- Binding at the top of the toe post.

12.    The Yoga Sling Trade Dress, which is a composite of the above-referenced features—an example of the overall appearance depicted below—is non-functional in its entirety, visually distinctive, and is unique in the footwear industry.



13.    The design of the Yoga Sling Trade Dress is neither essential to the use or purpose nor does it affect the cost or quality of the Yoga Sling sandal. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Yoga Sling Trade Dress. The aforesaid combination of features of the Yoga Sling Trade Dress provide no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render Deckers' Yoga Sling sandal distinct and recognizable as goods originating from Deckers' Sanuk® brand.

14.    Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the Sanuk® Yoga Sling sandal under the Yoga Sling Trade Dress, and as a result, sold millions dollars of Sanuk® Yoga Sling sandals.

15.    Deckers' Yoga Sling sandal is well-recognized and earned numerous praises for its innovative design by the consuming public and those in the trade throughout the United States.  For example, the Yoga Sling sandal was nominated in 2013 and 2014 as a SIMA "Footwear Product of the Year."

16.    Due to its long use, extensive sales, and significant advertising and promotional activities by Deckers, the Yoga Sling Trade Dress has achieved a high degree of recognition, widespread acceptance, and secondary meaning among consumers, the public, and those in the trade throughout the United States as a symbol that identifies Deckers as the source of footwear products featuring said trade dress.

### B.    Defendants' Infringing Activities

17.    This lawsuit arises from Defendants' design, manufacture, distribution, advertisement, marketing, offering for sale, and sale of certain footwear products, at least including but not limited to those identified by name as "Yoga Sling Flat Sandals" (the "Accused Products") that infringe upon Deckers' Yoga Sling Trade Dress and Yoga Sling Common Law Trademark.

18.    Upon information and belief, IT'S FRIDAY designs, develops and markets footwear for men, women and children, which are at least offered for sale online at www.hipimi.com, a website owned and operated by Defendants.

19.    Upon information and belief, Defendants designed, manufactured, advertised, marketed, distributed, offered for sale, and/or sold Accused Products, an exemplar of which is depicted (in comparison with Deckers' Sanuk® Yoga Sling Sandal) in the photographs below:

 

**Deckers' Sanuk® Yoga Sling Sandal      Accused "Yoga Sling Flat Sandals"**

20.    Deckers has not granted IT'S FRIDAY a license or any other form of permission to use any of its trademarks, design patents, trade dresses, or other intellectual property.

21.    IT'S FRIDAY is a competitor of Deckers, and upon information and belief, Defendants introduced the Accused Products into the stream of commerce in an effort to exploit the goodwill and reputation of Deckers' Sanuk® brand, and the immense popularity of the Sanuk® Yoga Sling Sandal.

22.    Upon information and belief, IT'S FRIDAY had actual notice of Deckers' Yoga Sling Trade Dress before the filing of the present lawsuit yet continued to sell infringing products despite having been put on notice of Deckers' rights and that the Accused Products infringe upon the Yoga Sling Trade Dress and Yoga Sling Common Law Trademark.

23.    Upon information and belief, Defendants have acted in bad faith and Defendants' unlawful acts have, and were intended to cause confusion, mistake, and/or deceive consumers as to the affiliation, connection, and association of the Accused Products with Deckers and the Sanuk® Yoga Sling Sandal, and to misled and confuse consumers as to the origin, sponsorship, or approval of the Accused Products by Deckers.

## FIRST CLAIM FOR RELIEF

### (Trade Dress Infringement of Yoga Sling Trade Dress - 15 U.S.C. § 1125)

24.     Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

25.     Since its introduction in 2013, Deckers has marketed Sanuk® Yoga Sling Sandals under the Yoga Sling Trade Dress, comprised of a composite of the features set forth above, non-functional in its entirety and unique and inherently distinctive in the footwear industry and among consumers.

26.     The design of the Yoga Sling Trade Dress is neither essential to the use or purpose nor does it affect the cost or quality of the Yoga Sling sandal. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Yoga Sling Trade Dress. The aforesaid combination of features of the Yoga Sling Trade Dress provide no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the Yoga Sling sandal distinct and recognizable as a product originating from Deckers' Sanuk® brand.

27.     Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the Sanuk® Yoga Sling sandal under the Yoga Sling Trade Dress, and as a result, sold millions of dollars of the Sanuk® Yoga Sling sandals.

28.     Deckers' Yoga Sling sandal is well-recognized throughout the United States and earned numerous praises for its innovative design by the consuming public and those in the trade. For example, the Yoga Sling sandal was nominated in 2013 and 2014 as a SIMA "Footwear Product of the Year."

29.     Due to its long use, extensive sales, and the significant advertising and promotional activities by Deckers, the Yoga Sling Trade Dress has achieved a high degree of recognition, widespread acceptance, and secondary meaning

among consumers and the public as a symbol identifying Deckers as the source of footwear products featuring said trade dress.

30.    The Accused Products produced, marketed, advertised, offered for sale and sold by Defendants bear confusingly similar reproductions of the Yoga Sling Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Deckers of the Accused Products.

31.    Defendants' unauthorized use of the Yoga Sling Trade Dress is without Deckers' permission or authority and in total disregard of Deckers' intellectual property rights. Defendants' unauthorized use of the Yoga Sling Trade Dress in connection with the Accused Products infringes upon the Yoga Sling Trade Dress and constitutes false designation of origin and a false representation that the Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Deckers.

32.    Defendants' infringing acts were willful, deliberate, and intended to confuse the public and cause injury to Deckers and/or taken in reckless disregard of Deckers' rights, as there are numerous other designs in the footwear industry, none of which necessitate copying or imitating the Yoga Sling Trade Dress, and IT'S FRIDAY had actual notice that the Accused Products would infringe the Yoga Sling Trade Dress.

33.    As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial.    Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of its infringing acts.

34.    Deckers is also entitled to an award of exemplary and punitive damages on account of Defendants' willful, deliberate, and/or intentional infringement in an amount sufficient to deter similar misconduct in the future.

35.    Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendants' infringement, which is ongoing.  Accordingly, Deckers is entitled to injunctive relief prohibiting Defendants from continuing to infringe upon the Yoga Sling Trade Dress and the use of any designs confusingly similar thereto.

**SECOND CLAIM FOR RELIEF**

**(Infringement of Unregistered Yoga Sling Trademark – 15 U.S.C. § 1125(a))**

36.    Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

37.    The Yoga Sling Common Law Trademark was first used by Deckers in interstate commerce at least as early as 2013 and is distinctive and exclusively owned and used by Deckers.

38.    As the result of significant sales and substantial investment in multi-media advertising and promotion by Deckers, in the United States and throughout the world as part of a long term and carefully planned marketing program, the Yoga Sling Common Law Trademark serves to identify Deckers to the consuming public as the source of the footwear on which the Yoga Sling Common Law Trademark is displayed. Consumers directly associate the Yoga Sling Common Law Trademark with Deckers, the Sanuk® brand, and with merchandise of the highest quality. As such, the Yoga Sling Common Law Trademark has developed strong secondary meaning and is of inestimable value to Deckers.

39.    Through many years of use in interstate commerce, Deckers has established common law trademark protection for its inherently distinctive Yoga Sling Common Law Trademark used on Deckers' footwear.

40.    As a direct result of the continuous and exclusive use of the Yoga Sling Common Law Trademark in interstate commerce, Deckers has established

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

significant good will and consumer expectation regarding the high quality and source of Deckers' goods, including, among others, women's footwear and accessories displaying said mark.

41.    Deckers has dedicated substantial monetary expenditures and resources to support its Yoga Sling sandal, bearing the Yoga Sling Common Law Trademark, by way of extensive advertising and promotional efforts through diverse media in the United States as well as internationally.

42.    Defendants, in connection with the distribution, production, distribution, advertisement, offer for sale and/or sale of their own footwear have utilized Deckers' Yoga Sling Common Law Trademark, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Deckers of Defendants' products. Indeed, Defendants have a named their own sandal the "Yoga Sling" Sandal as shown in the capture of Defendants' website below.



43.    Defendants' use of the Yoga Sling Common Law Trademark in connection with its own sandal creates a high likelihood of confusion amongst consumers, which is especially damaging to the good will established in the Yoga Sling Trade Common Law Trademark.

44.    Defendants' use of the Yoga Sling Common Law Trademark is without Deckers' permission or authority and in total disregard of Deckers' rights to control its intellectual property.

45.    Defendants' use of the Yoga Sling Common Law Trademark is likely to lead to and result in confusion, mistake or deception, and is likely to cause the public to believe that Defendants' products are produced, sponsored, authorized, or licensed by or that are otherwise connected or affiliated with Deckers, all to the detriment of Deckers.

46.    As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained on account of Defendants' infringement, and all gains, profits and advantages obtained by Defendants as a result of its unlawful acts.

47.    Deckers is also entitled to an award of exemplary and punitive damages on account of Defendants' willful, deliberate, and/or intentional infringement in an amount sufficient to deter similar misconduct in the future.

48.    Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the damages caused by Defendants' infringement, which is ongoing. Accordingly, Deckers is entitled to injunctive relief prohibiting Defendants from continuing to infringe upon the Yoga Sling Common Law Trademark and the use of any mark confusingly similar thereto.

## THIRD CLAIM FOR RELIEF

### (Trade Dress Infringement Under New York Common Law)

49.    Deckers incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

50.    Defendants' use of the Yoga Trade Dress constitutes common law trade dress infringement in violation of the common law of the state of New York.

51.    Defendants' unauthorized use of the Yoga Sling Trade Dress has caused and is likely to cause confusion as to the source of Defendants' products, all to the detriment of Deckers.

52.    Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Deckers.

53.    Deckers has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' infringing conduct, unless it is enjoined by this Court.

54.    The conduct herein complained of was extreme, outrageous, and was inflicted on Deckers in reckless disregard of Deckers' rights.  Said conduct was despicable and harmful to Deckers and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of Defendants, and to deter them from similar conduct in the future.

55.    In light of the foregoing, Deckers is entitled to injunctive relief prohibiting Defendants from infringing the Yoga Sling Trade Dress, and to recover all damages, including attorneys' fees, that Deckers has sustained, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## FOURTH CLAIM FOR RELIEF

### (Trademark Infringement Under New York Common Law)

56.    Deckers incorporates herein by reference the averments of the

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

preceding paragraphs as though fully set forth herein.

57.    Deckers has common law rights to the Yoga Sling Common Law Trademark in the state of New York due to its extensive promotion and sale of products in connection with said mark within the state.

58.    Deckers' Yoga Sling Common Law Trademark has achieved a high degree of consumer recognition and secondary meaning nationwide and within the state of New York, which serves to identify Deckers as the source of the high-quality products on which the mark appears.

59.    Defendants' use of the Yoga Sling Common Law Trademark constitutes common law trade dress infringement in violation of the common law of the state of New York.

60.    Defendants' unauthorized use of the Yoga Sling Common Law Trademark has caused and is likely to cause confusion as to the source of Defendants' products, all to the detriment of Deckers.

61.    Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Deckers.

62.    Deckers has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' infringing conduct, unless it is enjoined by this Court.

63.    The conduct herein complained of was extreme, outrageous, and was inflicted on Deckers in reckless disregard of Deckers' rights.  Said conduct was despicable and harmful to Deckers and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of Defendants, and to deter them from similar conduct in the future.

64.    In light of the foregoing, Deckers is entitled to injunctive relief prohibiting Defendants from infringing the Yoga Sling Common Law Trademark, and to recover all damages, including attorneys' fees, that Deckers

has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## FIFTH CLAIM FOR RELIEF

### (Unfair Competition Under New York Common Law)

65.    Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

66.    Defendants' misappropriation and unauthorized use of the Yoga Sling Trade Dress and Yoga Sling Common Law Trademark to promote the Accused Products also constitutes unfair competition in violation of common law of the state of New York.

67.    Deckers has expended substantial time, resources and effort in creating and developing Sanuk® footwear, including the Sanuk® Yoga Sling Sandal, the embodiment of the Yoga Sling Trade Dress, which consumers recognize as originating from Deckers.

68.    Upon information and belief, Defendants introduced Accused Products into the stream of commerce in order to exploit the goodwill and reputation established in the Sanuk® Yoga Sling Sandal for Defendants' own pecuniary gain. Defendants' unauthorized use of the Yoga Sling Trade Dress and Yoga Sling Common Law Trademark has allowed Defendants to unfairly benefit from said goodwill and reputation in unfair and unlawful competition with Deckers.

69.    Upon information and belief, Defendants' unlawful acts are willful, deliberate, and intended to cause confusion among the public and taken in reckless disregard of Deckers' rights. As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

70.    As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial.    Deckers is entitled to recover all damages, including attorneys' fees, that Deckers has sustained on account of Defendants' unfair competition, and all gains, profits and advantages obtained by Defendants as a result of its unlawful acts.    Furthermore, because Deckers has no adequate remedy at law for Defendants' ongoing unlawful conduct, Deckers is entitled to injunctive relief prohibiting Defendants from continuing its unfair competition.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Deckers Outdoor Corporation respectfully prays for judgment against Defendants It's Friday, Inc. and DOES 1-10 as follows:

1.    A judgment that Defendants willfully infringed Deckers' Yoga Sling Trade Dress in violation of 15 U.S.C. § 1125;

2.    A judgment that Defendants willfully infringed Deckers' Yoga Sling Common Law Trademark in violation of 15 U.S.C. § 1125;

3.    An order permanently enjoining and restraining Defendants, their agents, servants, employees, officers, associates, and all persons acting in concert with any of them from infringing Deckers' intellectual property at issue, including but not limited to infringing acts such as:

a.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that bear an identical or confusingly similar design as Deckers' Yoga Sling Trade Dress;

b.    manufacturing, designing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products that bear the Yoga Sling Common Law Trademark or other marks

substantially indistinguishable from or confusingly similar thereto, including, without limitation, the Accused Products,

c.    engaging in any other activity constituting unfair competition with Deckers, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements used or owned by or associated with Deckers; and

d.    committing any other act which falsely represents or which has the effect of falsely representing goods and services of Defendants are licensed, authorized, offered, produced, sponsored, or in any other way associated with Deckers;

4.    An order requiring Defendants to recall from any distributors and retailers and to deliver to Deckers for destruction any Accused Products, including the means of making such products;

5.    An order requiring Defendants to file with this Court and serve on Deckers within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth the manner in which Defendants complied with the injunction;

6.    An order for an accounting of all gains, profits and advantages derived by Defendants on account of the unlawful acts complained of herein pursuant to 15 U.S.C. § 1117(a), and any other applicable federal statute or New York state and common law;

7.    An award of compensatory damages equal to Defendants' profits and all damages sustained by Deckers as a result of Defendants' wrongful acts;

8.    An award of damages equal to treble Defendants' profits or Deckers' damages, whichever is greater, on account of Defendants' willful infringement;

9.    An award of punitive damages and Deckers' costs, attorneys' fees, and interest as allowed under applicable federal and New York state laws; and

10.    All other relief that the Court may deem just and proper.

Dated:    December 15, 2020    **BLAKELY LAW GROUP**

By:    */s/ Brent H. Blakely*
Brent H. Blakely (BB1966)
1334 Parkview Avenue, Suite 280
Manhattan Beach, CA 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401
***Attorneys for Plaintiff***
***Deckers Outdoor Corporation***

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Deckers Outdoor Corporation hereby demands a trial by jury of all claims so triable in this action.

Dated:    December 15, 2020    **BLAKELY LAW GROUP**

By:    */s/ Brent H. Blakely*
Brent H. Blakely (BB1966)
1334 Parkview Avenue, Suite 280
Manhattan Beach, CA 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401
***Attorneys for Plaintiff***
***Deckers Outdoor Corporation***